

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ✓
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| BOB SHAYNE, et al., | ) | CV 02-03850-SVW (RZx) |
|   Plaintiffs, | ) |  |
| v. | ) | ORDER GRANTING PLAINTIFFS' APPLICATION FOR REMAND |
| VIACOM INC. and CBS BROADCASTING INC., | ) |  |
|   Defendants. | ) |  |

____ Docketed
____ Copies/NTC Sent
____ JS-5 / JS-6
____ JS-2 / JS-3
____ CLSD

## I.  INTRODUCTION

This action was originally filed in Superior Court of the State of California for the County of Los Angeles.  Defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446, alleging that diversity jurisdiction exists under 28 U.S.C. § 1332. In particular, Defendants claim that the non-diverse Plaintiffs in this action were fraudulently joined, and therefore their presence does not destroy diversity.  Plaintiffs now apply to this Court to have this case remanded to state court.

As set forth below, Plaintiffs' application for remand is GRANTED.

ENTERED ON ICMS
JUL 5 2002
CV

## II.   FACTUAL / PROCEDURAL HISTORY

This action was filed as a consequence of this Court's previous decision in <u>Wynn, et al. v. National Broadcasting Company, Inc., et al.</u>, CV-00-11248 SVW (RZx).  In the present action, Plaintiffs, 159 current and former television writers over the age of 40, are asserting claims under California's Fair Employment and Housing Act ("FEHA") and the Unruh Act against Defendants CBS Broadcasting Inc. ("CBS") and Viacom Inc. ("Viacom") for age discrimination in hiring.

Defendants removed this action on the basis of diversity.  It is undisputed that, at present, there is no complete diversity in this case.  Defendant Viacom is a Delaware corporation with its principal place of business in New York, and Defendant CBS (which is a wholly-owned subsidiary of Viacom) is a New York corporation with its principal place of business in New York.  Seven of the 159 Plaintiffs claim to be New York residents, thereby destroying diversity.

Nevertheless, Defendants assert that the seven New York Plaintiffs were fraudulently joined, and removed on that basis.

## III. ANALYSIS

### A.   Test for Fraudulent Joinder of Plaintiff

"Fraudulent joinder is a term of art.  If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."  <u>McCabe v. General Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987).  This fraudulent joinder test is typically only applied to the fraudulent joinder of defendants, not plaintiffs.  In fact, the Ninth Circuit has never

1    spoken to the issue of fraudulent joinder of plaintiffs in a

2    published opinion, and at least one court has explicitly held that it

3    is not applicable.  See Johnston Indus., Inc. v. Milliken & Co, 45

4    F.Supp.2d 1308, 1312-14 (M.D. Ala. 1999).

5         Nevertheless, the purpose of the fraudulent joinder doctrine

6    seems applicable to plaintiffs as well as defendants.  In fact,

7    several cases - including at least one district court case in the

8    Ninth Circuit - have allowed a removing party to assert that a

9    plaintiff was fraudulently joined.  See, e.g., Hess v. U.S. Surgical

10   Corp., No. C 99-2118 MJJ, 1999 WL 638241 at *2-3 (N.D. Cal. Aug. 5,

11   1999); Ampere Automotive Corp. v. Fullen, No. 01 C 6818, 2001 WL

12   1268554 (N.D. Ill. Oct. 17, 2001); Foslip Pharmaceuticals, Inc. v.

13   Metabolife Int'l, Inc., 92 F.Supp.2d 891 (N.D. Iowa 2000).

14        However, more than simply deciding whether or not a defendant

15   can assert a fraudulent joinder of plaintiff claim - which the

16   majority rule seems to allow - the Court must decide what test to

17   apply for its determination.  Some courts apply the same test as that

18   for fraudulent joinder of defendants, while other courts feel that

19   the appropriate test is the "real party in interest" test.

20        One district court in the Fifth Circuit cited the fraudulent

21   joinder of plaintiff test as follows: To establish that plaintiffs

22   were fraudulently joined, the defendant must demonstrate by clear and

23   convincing evidence that either (1) there has been outright fraud in

24   the plaintiff's recitation of jurisdictional facts or (2) there is no

25   possibility that the plaintiffs would be able to establish a cause of

26   action against the defendant in state court.  Oliva v. Chrysler

27   Corp., 978 F.Supp. 685, 689 (S.D. Tex. 1997).  This is the same test

28

1    that the Fifth Circuit applied to fraudulent joinder of defendants.

2    See Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir.

3    1995).

4         However, an appellate court in the Eighth Circuit has assigned a

5    different test: "[I]f the 'nondiverse' plaintiff is not a real party

6    in interest, and is purely a formal or nominal party, his or its

7    presence in the case may be ignored in determining jurisdiction.  And

8    such a party may be dropped from the case. . . . [I]f the nondiverse

9    plaintiff is a real party in interest, the fact that his joinder was

10   motivated by a desire to defeat federal jurisdiction is not

11   material."  Iowa Pub. Serv. Co. v. Medicine Bow Coal Co., 556 F.2d

12   400, 404 (8th Cir. 1977).  According to that court, "[t]he 'real

13   party in interest' is the person who, under governing substantive

14   law, is entitled to enforce the right asserted, and in a diversity

15   case, the governing substantive law is ordinarily state law. . . .

16   The fact that a plaintiff's claim may lack legal or factual merit

17   does not necessarily mean that he lacks standing to assert the claim

18   as a real party in interest."  Id. at 405; cf. Farrell Construction

19   Co. v. Jefferson Parish, La., 896 F.2d 136, 140 (5th Cir. 1990)

20   (applying the "real party in interest" test in circumstances similar

21   to fraudulent joinder of plaintiff).

22        The Seventh Circuit also applies the "real party in interest

23   test" when a plaintiff's status is challenged for diversity purposes.

24   See Garbie v. Daimler Chrysler Corp., 211 F.3d 407, 408-10 (7th Cir.

25   2000).   In other words, "a federal court must disregard nominal or

26   formal parties and rest jurisdiction only upon the citizenship of

27   real parties to the controversy."  Navarro Sav. Ass'n v. Lee, 446

28

-4-

1 | U.S. 458, 460, 100 S.Ct. 1779, 1782-83 64 L.Ed.2d 425 (1980). "A

2 | real party in interest is the person who, under governing substantive

3 | law, possesses the right sought to be enforced." Illinois v. Life of

4 | Mid-America Ins. Co., 805 F.2d 763, 764 (7th Cir. 1986); see also 14

5 | Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal

6 | Practice & Procedure, § 3641 (3d ed. 1998) ("[I]n cases in which the

7 | plaintiff attempts to defeat jurisdiction by the joinder of a

8 | non-diverse plaintiff, the courts will allow the transaction only if

9 | that person is deemed a real party in interest under Rule 17(a).").

10 | Several recent district court cases have applied the "real party

11 | in interest" test in cases of fraudulent joinder of plaintiffs. See,

12 | e.g., UICI v. Gray, No. CIV.A. 3:01CV0921L, 2002 WL 356753 (N.D. Tex.

13 | March 4, 2002); Intershoe, Inc. v. Filanto S.P.A., 97 F.Supp.2d 471

14 | (S.D.N.Y. 2000). However, other courts have struggled with the

15 | decision of what test to apply. See Ampere Automotive Corp. v.

16 | Fullen, 2001 WL 1268554 at *2-5 (applying both the "real party in

17 | interest" test and the traditional fraudulent joinder of defendants

18 | test); Foslip Pharmaceuticals, Inc. v. Metabolife Int'l, Inc., 92

19 | F.Supp.2d at 904 ("This court will, of course, first apply the test

20 | articulated in controlling precedent of this circuit to the question

21 | of whether or not [the non-diverse plaintiff] has been "fraudulently

22 | joined," but in the interest of completeness, will also consider

23 | whether the joinder of [the non-diverse plaintiff] satisfies the

24 | slightly more stringent "no possibility of a cause of action"

25 | analysis. . . .").

26 | In California, one Northern District court dealt with whether a

27 | non-diverse plaintiff, who was a shareholder of the plaintiff

28 |

1   corporation, although not the shareholder of record, was fraudulently

2   joined for the purpose of defeating diversity.  <u>Hess v. U.S. Surgical</u>

3   <u>Corp.</u>, 1999 WL 638241 at *1.  That court, while acknowledging the

4   traditional fraudulent joinder standard from <u>McCabe</u>, held that the

5   <u>Navarro</u> "real party in interest" rationale was more applicable to

6   that case.  Under that rationale, the court found that "Defendants

7   fail[ed] to overcome their heavy burden of showing that [the non-

8   diverse plaintiff was] an improper plaintiff."  <u>Id.</u>, at *2.

9        Defendants here argue that the <u>McCabe</u> standard is more

10  applicable to the present case, because we are not dealing with real

11  parties in interest, but rather a potential class action where every

12  Plaintiff (and the non-diverse Plaintiffs in particular) allegedly

13  fails to assert a viable cause of action against the Defendants.

14  Therefore, the proper test is whether or not the non-diverse

15  Plaintiffs obviously fail to state a cause of action against the

16  Defendants.  <u>See</u> <u>McCabe</u>, 811 F.2d at 1338.

17       The contrary argument recognizes that the Ninth Circuit strictly

18  construes the removal statute against removal jurisdiction.  <u>See Gaus</u>

19  <u>v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).  Therefore, by

20  allowing Defendants to remove this action, merely because they claim

21  that certain Plaintiffs (and, in fact, all Plaintiffs) fail to state

22  a viable claim against Defendants, the Court would be allowing a

23  Defendant to have a federal court rule on a Rule 12(b)(6) motion

24  anytime there are resident and non-resident Plaintiffs in a state

25  court action, merely by asserting that the non-resident plaintiffs

26  fail to state a claim, and therefore are fraudulently joined.  In

27  other words, the proper analysis would be to comport with Rule 17(a)

28

center

-6-

1 and insure that the named-plaintiffs are real parties in interest.

2 This simply requires that the plaintiff be entitled to enforce the

3 right asserted under governing substantive law, regardless of whether

4 the claim has merit. <u>See, e.g.</u>, <u>Medicine Bowl Coal Co.</u>, 556 F.2d at

5 404-05.

6     Nevertheless, the Court finds it unnecessary to resolve the

7 debate over the proper test for fraudulent joinder of plaintiffs.

8 Under the facts of the present case, the two tests are somewhat

9 similar, and, more importantly, Defendants' argument fails under

10 either test.

11

12     **B.**   **Application to this case**

13     A defendant seeking removal on fraudulent joinder grounds bears

14 a "heavy burden." <u>See Pampillonia v. RJR Nabisco, Inc.</u>, 138 F.3d

15 459, 461 (2d Cir. 1998). Fraudulent joinder must be shown by clear

16 and convincing evidence, resolving "all factual and legal issues" in

17 plaintiff's favor. <u>Id.</u> The Court resolves any uncertainties in

18 applicable state law in plaintiffs' favor and subjects the complaint

19 to a slightly lower standard than is required to withstand a motion

20 to dismiss for failure to state a claim. <u>See Batoff v. State Farm</u>

21 <u>Ins. Co.</u>, 977 F.2d 848, 852 (3d Cir. 1992); <u>Hartley v. CSX Transp.,</u>

22 <u>Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999).

23     With regard the Plaintiffs' FEHA claims,[1] Defendants argue that

24 each Plaintiff must be an "applicant" whom Defendants "refuse[d] to

25 hire or employ." Cal. Govt Code § 12941(a). Defendants claim that

26 _____

27     [1] In light of the Court's holding that Plaintiffs have a valid
cause of action under FEHA, it is unnecessary to address Plaintiffs'

28 claims under the Unruh Act.

-7-

1  five of the non-diverse Plaintiffs only state in conclusory fashion
2  that they "applied for television writing opportunities with CBS at
3  one or more times while they were age forty or above, but were
4  rejected as a result of their age ..."  Complaint, ¶ 3.  Defendants
5  argue that this is not sufficient to state a FEHA cause of action.
6  The Court views this argument to be an argument under both the "real
7  party in interest test" (because Defendants essentially claim that
8  Plaintiffs, because they are not "applicants," cannot enforce a right
9  under FEHA) and the "obvious failure to state a viable cause of
10  action" test.

11      However, this argument fails on its face.  As Defendants even
12  admit, five of the New York Plaintiffs have claimed that they applied
13  and were rejected to CBS.  A person who alleges that he applied for
14  and was rejected from a job is stating a fact, not a conclusion.
15  Moreover, this fact, if true, would allow that person to state a
16  claim under FEHA.

17      Furthermore, even if the Plaintiffs did not apply for a
18  position, and were moving forward only on a deterred applicant claim,
19  that also would arguably allow them to state a claim.  While this
20  Court stated in Wynn that many of the plaintiffs in that case had not
21  specifically alleged that they were deterred from applying to every
22  defendant, and the Court seriously doubted the viability of such an
23  allegation based on the facts, the Court also expressly declined to
24  rule on the merits of that claim, because it was premature to do so
25  in a Rule 12(b)(6) motion.  Furthermore, the Court never opined as to
26  whether a deterred applicant theory was available under FEHA, as it
27  is under Title VII.  Just as in Wynn, there is no reason for the
28

1   Court to disallow the deterred applicant theory at the pleading

2   stage, and there is no law stating that such a theory is inapplicable

3   under FEHA, particularly since it is applicable under Title VII.

4   Therefore, since this Court is required to resolve any uncertainties

5   in the applicable state law in favor of Plaintiffs for the purposes

6   of removal, the non-diverse Plaintiffs would satisfy the fraudulent

7   joinder test even if they had only alleged that they were deterred

8   from applying.

9        Finally, Defendants also claim that the New York Plaintiffs

10  cannot state a claim because their claims are untimely.  In

11  particular, Defendants claim that the New York Plaintiffs failed to

12  allege that the unlawful employment practice occurred within one year

13  of the filing of the administrative complaint.[2]  Moreover, to the

14  extent that the Plaintiffs can assert that they were exposed to a

15  continuing violation, Defendants claim that this doctrine is

16  inapplicable to failure-to-hire cases, and thus Plaintiffs claims are

17  untimely.

18       These arguments also fail.  Without the need to go into the

19  legal merits behind Defendants' continuing violation argument, the

20  facts in the record indicate that at least one New York Plaintiff,

21  Allan Leicht, has alleged an unlawful employment practice within one

22  year of the filing of his administrative complaint, and thus has a

23  timely claim for a FEHA violation.  See Caudillo v. Allstate Ins.

24  Co., 196 F.Supp.2d 999, 1002 (C.D. Cal. 2002) ("[C]ourts may consider

25

26       [2]  Cal. Govt Code § 12960 requires that "[n]o complaint may be

27  filed [with the Department of Fair Employment and Housing (DFEH)]
    after the expiration of one year form the date upon which the alleged

28  unlawful practice ... occurred."

                                  -9-

facts beyond the pleadings when fraudulent joinder is raised."};
Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).

First, although the Complaint does not provide a date of the last affirmative act of alleged employment discrimination, Leicht indicates in his EEOC Charge of Discrimination that he has been the subject of discrimination from 1997 until the present, and that he attempted to obtain one or more writing opportunities with the Defendants, but was unsuccessful.  At this stage in the pleadings, that alone would be sufficient to satisfy the statute of limitations, because the running of the statute of limitations is not "apparent from the face of the complaint."  See Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 119 (9th Cir. 1980); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

Furthermore, Leicht has submitted a declaration, in which he claims he attempted to contact a CBS executive in the spring of 2001 by telephone to express interest in writing for CBS, and sent him a letter on May 11, 2001 to this effect.  According to Leicht, CBS did not respond to these requests for employment.[3]  As Defendants point out, it is debatable whether this attempt to contact CBS would constitute an application for employment.  Nevertheless, in light of the strong presumption against removal jurisdiction, as well as the "heavy burden" on the Defendants to demonstrate fraudulent joinder, the Court finds that Plaintiffs have satisfied whatever test need be

---

[3] At oral argument, Defendants submitted evidence indicating that, according to CBS's records, none of the seven New York Plaintiffs had submitted scripts to CBS since at least 1994. However, in light of Leicht's assertion that he did attempt to gain employment, the Court regards Defendants' evidence as simply creating a triable issue of fact, which favors the Court's decision to remand.

1  applied to this instance, and thus Defendants' fraudulent joinder

2  argument is rejected.  See Gaus v. Miles, Inc., 980 F.2d at 566; see

3  also In re Fort Motor Co./Citibank (S.D.), N.A., 264 F.3d 952, 957

4  (9th Cir. 2001) ("The party asserting federal jurisdiction bears the

5  burden of proving the case is properly in federal court.").

6       Therefore, since the Court holds that the non-diverse Plaintiffs

7  were not fraudulently joined, there is no complete diversity in this

8  case, and thus the Court lacks proper jurisdiction and must remand.

9

10  **IV.  CONCLUSION**

11       For the reasons discussed above, Plaintiffs' application for

12  remand is GRANTED.  This case is hereby remanded to the Superior

13  Court of the State of California for the County of Los Angeles.

14

15       IT IS SO ORDERED.

16

17  DATED: _7/2/02_____

18                              _____
                                STEPHEN V. WILSON
19                              UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28